## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| Maggie King, Inc., | File No. 23-cv-748 (ECT/DJF) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| ABC Bus Companies, Inc., ABC Bus Leasing, Inc., and ABC Bus, Inc., | |
| Defendants. | |

Benjamin Loetscher, Ferdinand F. Peters, and Jay Smigielski, Ferdinand F. Peters Law Firm, St. Paul, MN, for Plaintiff Maggie King, Inc.

Peter J. Gleekel and Samuel H.J. Schultz, Larson King, LLP, St. Paul, MN, for Defendants ABC Bus Companies, Inc.; ABC Bus Leasing, Inc.; and ABC Bus, Inc.

This diversity case concerns the purchase of a "salvaged" coach bus. The bus was salvaged and repaired after being hit by a garbage truck. Plaintiff Maggie King, Inc., bought the bus after that, not knowing its salvaged history. Defendants are affiliated organizations in the coach bus business. One of them—the Complaint doesn't say which—sold the bus to Maggie King. Maggie King claims that one or more of the Defendants knew about the bus's salvaged history but failed to disclose that information as part of the sale. Maggie King asserts several claims under Minnesota law and seeks damages and other relief arising from Defendants' failure to disclose.

Defendants have moved to compel arbitration under a dispute-resolution provision in the purchase agreement for the bus. The primary issue is whether Defendants waived

their contractual arbitration rights by waiting too long to seek arbitration and in the meantime substantially invoking the federal court's litigation machinery. Defendants' motion will be granted, and the case will be stayed pending arbitration. Though Defendants failed to exercise their arbitration rights at the earliest opportunity, they have not defended the case in a way that results in waiver of those rights under Eighth Circuit precedents.

*Maggie King's Factual Allegations and Claims*

Begin with a party-reference issue. There are three Defendants: ABC Bus Companies, Inc., ABC Bus Leasing, Inc., and ABC Bus, Inc. Compl. [ECF No. 1] at 1 (caption) and ¶¶ 4–9. The Complaint almost always lumps Defendants together as "ABC." *See generally id.* The Complaint begins this practice in its opening paragraph. *Id.* at 1. The Complaint does not identify which of these organizations sold the bus to Maggie King. *See id.* ¶ 13 (identifying the collective "ABC" as seller). Defendants do not clarify things in their motion; like the Complaint, they refer to themselves collectively as "ABC." *See* Defs.' Mem. in Supp. [ECF No. 32] at 1. Though this practice raises legal and practical concerns, it will be followed here. If the parties are not able to attribute specific conduct to a specific Defendant, then a court is in no position to be more specific.

Now turn to the facts. They are taken from Maggie King's Complaint. They are intended merely to provide background to ABC's motion to compel arbitration. They are not accepted or presumed to be true. Maggie King purchased the bus from ABC for $300,000 in 2017. Compl. ¶¶ 13, 37. Years before, in 2012 or 2013, the bus had been hit by a garbage truck and totaled. *Id.* ¶ 17. A third party purchased and rebuilt the bus. *Id.* ¶¶ 30–31. After that, the bus's title should have reflected that bus had been "salvaged" or

"reconditioned." *See id.* ¶¶ 30, 33–34. Beginning with a 2016 re-titling in Nebraska, however, the bus's title mistakenly omitted any such designation. *Id.* ¶ 33. ABC acquired the bus after that. *See id.* ¶ 35. So, when Maggie King bought the bus from ABC in 2017, the bus's title gave no indication of the vehicle's salvaged condition. *Id.* ¶¶ 38–40.

Maggie King alleges that ABC knew of the bus's salvaged condition but kept that information from Maggie King. *See id.* ¶¶ 41–47; 65–95. According to Maggie King, ABC learned of the bus's salvaged condition because ABC participated in the bus's "salvage auction" soon after the bus was totaled in the garbage-truck collision. *See id.* ¶¶ 20–28. Maggie King claims that, at the time it bought the bus from ABC, the bus's maximum value was between $25,000 and $40,000, far less than the $300,000 Maggie King paid. *Id.* ¶ 59.

Maggie King asserts claims across ten counts for fraud, negligent misrepresentation, breach of warranties, violation of a Minnesota title-branding statute, promissory estoppel, and unjust enrichment. *Id.* ¶¶ 63–155. For relief, Maggie King seeks damages, a declaratory judgment, and attorneys' fees and costs. *See id.* at 24 (following "**PRAYER FOR RELIEF**").

*The Purchase Agreement's Arbitration Provisions*

The Purchase Agreement and Bill of Sale for the bus included the following provision governing dispute resolution:

> 19. <u>Dispute Resolution</u>. The parties hereby agree to attempt to resolve all disputes arising out of or in connection with this Agreement (including any question regarding its existence, validity or termination) promptly, equitably and in a good faith manner, through discussions and negotiations between their

3

respective representatives and a mediator. If mediation does not resolve the dispute, then the parties shall refer such dispute to and have such dispute finally resolved by arbitration under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). In each case, the neutral must be a former judge with experience in commercial disputes. The arbitration shall be heard by a single arbitrator appointed by mutual agreement of all parties or, if the parties are unable to agree, the arbitrator shall be appointed by the AAA. Each arbitration shall be conducted in Minneapolis, Minnesota, unless the parties agree otherwise. The award rendered in any arbitration commenced hereunder shall be final and binding upon the parties and judgment thereon may be entered in any court having jurisdiction for its enforcement.

Purchase Agreement [ECF No. 33-1] ¶ 19. The Purchase Agreement also contained a provision concerning choice of law and forum selection:

20.   Governing Law; Waiver of Jury Trial; Consent to Jurisdiction.   This Agreement shall be governed by, and construed in accordance with, the law of the State of Minnesota, without giving effect to the conflicts of laws principles thereof. Each of the parties hereto irrevocably waives any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement, or the transactions contemplated hereby. Subject to Section 19, at the option of the Company, this Agreement may be enforced in any federal court or Minnesota state court sitting in Rice County, Minnesota; and each consents to the jurisdiction and venue of any such court and waives any argument that venue in such forums is not convenient.

*Id*. ¶ 20.

*This Case's Procedural History*

Maggie King filed the case on March 28, 2023. *See* Compl. Defendants were served with process the next day, on March 29. ECF Nos. 4–6. On April 14, 2023, the parties filed a stipulation "extending the time period for Defendants to answer or otherwise

4

respond to Plaintiff's Complaint until April 28, 2023," ECF No. 9, and Magistrate Judge Foster approved the stipulation, ECF No. 11.  On April 28, the parties filed a second stipulation "extending the time period for Defendants to answer or otherwise respond to Plaintiff's Complaint until May 5, 2023."  ECF No. 12.  Again, Magistrate Judge Foster approved the stipulation.  ECF No. 14.

On May 5, ABC filed a Rule 12(b)(6) motion to dismiss.  ECF No. 15.  ABC did not seek dismissal of the entire case; it sought dismissal of four of Maggie King's ten counts on statute-of-limitations grounds.  *Id.*  In its supporting memorandum, ABC acknowledged that "[t]he essence of Plaintiff's claims against ABC arise out of a contract for the sale of goods," ECF No. 18 at 15, but ABC did not mention the governing contract's arbitration provision or its intent to seek to compel arbitration, *see generally id.*  ABC did not mention arbitration in its reply brief, either.  *See generally* ECF No. 22.  A hearing on ABC's motion occurred on June 26, 2023; the motion was denied from the bench for reasons stated on the record at the hearing.  ECF Nos. 23, 24.

ABC filed its Answer on July 10.  ECF No. 26.  Among eleven affirmative defenses, ABC alleged: "Plaintiff's claims are, in whole or in part, subject to the mandatory dispute resolution procedure—including but not limited to arbitration before the AAA—as provided by paragraph 19, 'Dispute Resolution,' of the Purchase Agreement and Bill of Sale dated June 13, 2017."  *Id.* at 16 ¶ 3.

On July 25, the parties filed a joint Rule 26(f) Report.  ECF No. 27.  In a section of the report regarding ABC's "claims/defenses," ABC listed the eleven affirmative defenses from its answer, including arbitration.  *Id.* at 2 ("Plaintiff's claims are subject to mandatory

arbitration pursuant to the terms of the purchase agreement between the parties[.]").  In the rest of the report, the parties identified a series of deadlines and limitations that would govern discovery.  *See id.* at 3–6.  These included, for example, a fact-discovery deadline of April 15, 2024, that each party anticipated the need for expert testimony in the areas of motorcoach valuation and vehicle titling standards, and an expert-discovery deadline of June 15, 2024.  *Id.* at 3–5.  The parties also proposed a deadline of May 1, 2024, for non-dispositive motions and a deadline of June 1, 2024, for dispositive motions.  *Id.* at 6.  Apart from being listed among ABC's affirmative defenses, the report did not mention arbitration or an arbitration-related motion.  *See generally id.*  On the parties' recommendation, Magistrate Judge Foster adopted the parties' proposed schedule and canceled a scheduled conference at which the joint report would have been addressed.  *See* ECF Nos. 28, 29.

Roughly one month later—on August 24, 2023—ABC filed its motion to compel arbitration.  ECF No. 30.  The motion was briefed in compliance with the schedule prescribed in Local Rule 7.1(c) for dispositive motions, ECF Nos. 30–41, and heard on October 16, 2023, ECF No. 43.

*Legal Rules Governing a Motion to Compel Arbitration Generally*

Under the Federal Arbitration Act (the "FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  The Supreme Court's "cases place it beyond dispute that the FAA was designed to promote arbitration.  They have repeatedly described the [FAA] as 'embod[ying] [a] national policy favoring arbitration.'"  *AT&T Mobility LLC v.*

6

*Concepcion*, 563 U.S. 333, 345–46 (2011) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). "But the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Once sued in federal court, a party to an arbitration agreement may move to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement" with respect to "any issue referable to arbitration under [the] agreement." 9 U.S.C. § 3. Or a party to an arbitration agreement "may petition" a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Federal courts refer generally to a motion or petition under either § 3 or § 4 as a "motion to compel" arbitration. *See, e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 254 (2009); *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022).

Of course, "a party cannot be required to submit to arbitration any dispute which he has not agreed . . . to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). When "the making of [an] arbitration agreement" is at issue, the Eighth Circuit "has refined this inquiry to asking 1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005) (quotation omitted). A motion to compel arbitration is analyzed either as a motion to dismiss under Rule 12(b)(6) or as a motion for summary judgment under Rule 56, depending on how the

motion is presented.  *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018); *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017).

*Legal Rules Governing the Waiver Question Specifically*

When a party sued in federal court delays filing a motion to compel arbitration, "the court faces a question: Has the defendant's request to switch to arbitration come too late?" *Morgan*, 596 U.S. at 413.  Before *Morgan*, the Eighth Circuit applied a three-part test to answer whether a party waived its right to arbitration, asking: (1) whether the party knew of its arbitration right; (2) whether the party "acted inconsistently with that right"; and (3) whether the party "prejudiced the other party by these inconsistent acts."  *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) (quotations omitted). In *Morgan*, the Supreme Court rejected the third (prejudice) element of this test, holding that "the Eighth Circuit was wrong to condition a waiver of the right to arbitrate on a showing of prejudice."  596 U.S. at 417.  This third element, the Court said, amounted to an arbitration-favoring variant of a federal procedural rule forbidden by the FAA.  *Id.* at 418.

In view of *Morgan*, Maggie King and ABC agree that the waiver question should be answered in this case by applying the first two elements of the Eighth Circuit's original test—that is, whether ABC (1) knew of its arbitration right, and (2) acted inconsistently with that right.  *See* Pl.'s Mem. in Opp'n [ECF No. 36] at 6–7; Defs.' Reply Mem. [ECF No. 41] at 3.

Consistent with the parties' agreement, it seems appropriate to apply this two-part test here.  Post-*Morgan*, the Eighth Circuit has analyzed the problem that way.  *See*

*Breadeaux's Pisa, LLC v. Beckman Bros. Ltd.*, 83 F.4th 1113, 1117–18 (8th Cir. 2023). District courts within the Eighth Circuit have done the same. *See, e.g.*, *In re Pawn Am. Consumer Data Breach Litig.*, No. 21-cv-2554 (PJS/JFD), 2023 WL 3375712, at *2–3 (D. Minn. May 11, 2023); *Duncan v. Int'l Markets Live, Inc.*, No. 4:20-cv-00017-RGE-HCA, 2022 WL 18584630, at *9 (S.D. Iowa Dec. 9, 2022).[1]  In view of the parties' agreement, pre-*Morgan* Eighth Circuit cases addressing the first two elements remain controlling.

The first element is not disputed.  ABC acknowledges in its reply brief that "ABC and Plaintiff are deemed to have knowledge of the arbitration clause because it appears in the Purchase Agreement between the parties."  Defs.' Reply Mem. at 3.  Thus, whether ABC's request to switch to arbitration came too late depends on whether ABC "acted inconsistently with" its arbitration right.

Several rules guide the determination of whether a party has acted inconsistently with its arbitration right.  "To safeguard its right to arbitration, a party must 'do all it could

---

[1]      It is possible the law applied in other cases going forward may head in a different direction.  In *Morgan*, the Supreme Court limited its holding to a "single issue"—the validity of the prejudice element of the Eighth Circuit's arbitration-waiver test.  596 U.S. at 416–17.  The Supreme Court did not adopt the first two elements of the Eighth Circuit's test as the rule.  Rather, the Court acknowledged that a different framework might apply to answer whether a party's arbitration request came too late.  For example, the Court noted the "role state law might play in resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate."  *Id.* at 416.  And the court gave the Eighth Circuit leeway on remand to apply the first two elements of its waiver test "or . . . determine that a different procedural framework (such as forfeiture) is appropriate."  *Id.* at 419.  Here, the parties' agreement that the first two elements of the Eighth Circuit's pre-*Morgan* test should be applied to answer whether ABC waived its arbitration right takes these issues off the table.  In other words, the parties' agreement makes it unnecessary to decide whether or what role state law or another federal doctrine (such as forfeiture, estoppel, or laches) might play in resolving whether ABC's arbitration request came too late.

reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.'" *Lewallen*, 487 F.3d at 1091 (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)). "A party acts inconsistently with its right to arbitrate if the party '[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right.'" *Id.* at 1090 (quoting *Ritzel Commc'ns v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993)).

"A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." *Id.* A party may substantially invoke the litigation machinery by filing a dispositive motion, though not every dispositive motion represents a substantial invocation of the litigation machinery. On the one hand, a motion that seeks "a final decision from the district court on the merits of the parties' dispute . . . is inconsistent with resolving the case through arbitration." *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 857 (8th Cir. 2021) (cleaned up). On the other hand, "[n]ot every motion to dismiss is inconsistent with the right to arbitration." *Hooper v. Advance Am., Cash Advance Centers of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009). In *Hooper*, the court approvingly cited several cases in which courts held that certain motions to dismiss were not inconsistent with the right to arbitration. *Id.* These included motions challenging jurisdictional or other non-merits grounds, frivolous claims, and non-arbitrable claims. *See id.* And the court in *Hooper* cautioned: "Motions to dismiss are not homogenous. District courts should continue to consider the totality of the circumstances." *Id.*

"[W]hen the relevant conduct happens in court, waiver is for the judge, rather than an arbitrator, to decide." *McCoy v. Walmart, Inc.*, 13 F.4th 702, 704 (8th Cir. 2021). And "[w]here . . . the concern is whether the undisputed facts of defendant's pretrial participation in the litigation satisfy the standard for waiver, the question of waiver of arbitration is one of law." *Richards v. Ernst & Young LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013) (quotation omitted); *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) (same).

*Whether ABC Substantially Invoked the Litigation Machinery*

Here, the relevant procedural facts on which the waiver question turns are reflected in the docket, and they are undisputed. Though applying the arbitration-waiver rules to ABC's litigation conduct poses a close call, I conclude the better answer is that ABC has not waived its contractual arbitration right. This is so for several reasons.

(1) In a literal sense, ABC did not do everything "it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Lewallen*, 487 F.3d at 1091. Strict compliance with this rule would have required ABC to file its motion to compel arbitration soon after receiving service of process, or in late April or early May 2023. *See* ECF Nos. 4–6. ABC did not do that. Regardless, I do not understand the Eighth Circuit to intend the "earliest feasible determination" rule to be taken literally. If, for example, some Rule 12 motions are not inconsistent with the right to arbitration, *Hooper*, 589 F.3d at 922, it follows that a defendant, consistent with Eighth Circuit law, may seek to take advantage of some

available court procedures before filing a motion to compel arbitration without waiving its arbitration right.

(2) ABC's motion to dismiss is better characterized as one of those motions that was not inconsistent with arbitration rights. The motion was partial, not exhaustive. ABC sought dismissal of four of the ten counts in Maggie King's Complaint. ECF No. 15. And the motion was based on a single statute-of-limitations defense. *See generally* ECF No. 18. The motion did not challenge whether Maggie King's factual allegations were adequate to plausibly show the elements of the claims asserted in these four counts. *Id.* In other words, there was no chance that a decision on the motion would end the case in federal court or prompt consideration of any aspect of the merits of Maggie King's remaining claims. No matter what, claims would remain for adjudication. Nor was the motion extensive. It did not concern "matters of first impression," difficult legal questions, or an extensive factual record. *Hooper*, 589 F.3d at 921. Reflecting its limited, straightforward character, the motion was denied from the bench for reasons stated on the record at the hearing. ECF Nos. 23, 24. The limited character of its partial motion to dismiss distinguishes ABC's conduct from the conduct of litigants whom the Eighth Circuit has found waived arbitration rights. *See McCoy*, 13 F.4th at 703–04 (finding waiver where defendant filed two motions "to dismiss case in its entirety") (quotation omitted). I conclude it would be a greater stretch to infer from ABC's partial motion to dismiss an objective intent to waive arbitration rights. *See Morgan*, 596 U.S. at 417 ("Waiver, we have said, 'is the intentional relinquishment or abandonment of a known right.'" (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))).

12

(3) ABC raised its arbitration right at the first opportunity after its partial motion to dismiss was denied, as an affirmative defense in its Answer.  ECF No. 26 at 16 ¶ 3 ("Plaintiff's claims are, in whole or in part, subject to the mandatory dispute resolution procedure—including but not limited to arbitration before the AAA—as provided by paragraph 19, 'Dispute Resolution,' of the Purchase Agreement and Bill of Sale dated June 13, 2017.").  And ABC did so again at the next opportunity, identifying its arbitration right among its defenses in the parties' joint Rule 26(f) Report.  ECF No. 27 at 2 ("Plaintiff's claims are subject to mandatory arbitration pursuant to the terms of the purchase agreement between the parties."); *compare Duncan*, 2022 WL 18584630, at *10–11 (finding waiver where the defendant, among other litigation activities, did not mention arbitration rights in any of its four responsive pleadings or as part of the pretrial scheduling process).  ABC filed its motion to compel arbitration not long after, on August 24, 2023.  These actions and the time in which they occurred are not consistent with an intent to waive arbitration rights.  *See McCoy*, 13 F.4th at 703 (noting that the defendant's litigation activities spanned fifteen months).

(4) It is true that, through the parties' joint Rule 26(f) report, ABC signed off on a litigation plan that, if followed, would have resulted in the case being litigated from start to finish in federal court, complete with fact discovery, expert witnesses and expert discovery, summary-judgment motions, and a jury trial.  *See generally* ECF No. 27.  But none of that has happened.  As far as the case's docket shows, there has been no discovery or discovery-related motion practice.  And the record on this motion contains no information suggesting that discovery has occurred or that there have been communications

between the parties or their counsel that might support the conclusion that ABC took some other action inconsistent with its arbitration rights.

To summarize, then, the undisputed facts show that ABC did not substantially invoke the litigation machinery before asserting its arbitration right and, therefore, did not waive its arbitration rights.

*Non-Waiver Grounds Asserted for the Denial of ABC's Motion*

Waiver aside, Maggie King argues that ABC's motion should be denied in whole or in part on two grounds. First, Maggie King argues that the statute-of-limitations argument ABC advanced in support of its motion to dismiss is not legally consistent with ABC's motion to compel arbitration. In Maggie King's view, ABC "cannot maintain a claim for affirmative relief under the parties' contract while also claiming that affirmative claims under the contract are barred by the statute of limitation." Pl.'s Mem. in Opp'n at 13. This is not persuasive. Logically, there is nothing inconsistent about a defendant on the one hand pursuing its arbitration rights under a contract while on the other hand maintaining a statute-of-limitations defense against claims asserted against it under the same contract. And Maggie King cites no authority supporting the conclusion that a statute of limitation or other similar doctrine might bar ABC from exercising its arbitration rights here.

Second, Maggie King claims that the only parties to the Purchase Agreement are "Maggie King, Inc. and ABC Leasing, Inc." *Id.* at 14. From this factual premise, Maggie King argues that its claims against two Defendants—ABC Bus Companies, Inc., and ABC Bus, Inc.—are not subject to the Purchase Agreement's arbitration provision. *Id.* Begin with a clarification. Maggie King has not named an organization called "ABC Leasing,

Inc." among the Defendants in this case.  So I understand Maggie King's reference to "ABC Leasing, Inc." in its opposition brief to mean "ABC Bus Leasing, Inc."  Regardless, the argument's factual premise is not correct.  The Purchase Agreement is between the "Purchaser," who the contract identifies as "Maggie King, Inc. dba All Travel," and the "Company," who the contract defines as "ABC Bus, Inc., its parent or one of its subsidiaries or affiliates."  Purchase Agreement at 2–3.  Maggie King alleges it purchased the bus from one of the Defendants.  Compl. ¶ 13.  It does not challenge contract formation in any respect.  In view of the Complaint's collective treatment of Defendants and the arbitration provision's incorporation of the Commercial Rules of the American Arbitration Association, the arbitrability of claims against non-seller Defendants is a question left to the arbitrator.  *Fallo v. High-Tech Inst.*, 559 F.3d 874, 876–80 (8th Cir. 2009); *see Barclay v. ICON Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DTS), 2020 WL 6083704, at *13 (D. Minn. Oct. 15, 2020).

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.      Defendants ABC Bus Companies, Inc., ABC Bus Leasing, Inc., and ABC Bus, Inc.'s Motion to Compel Arbitration [ECF No. 30] is **GRANTED**.

2.      This action is **STAYED** pending arbitration.

Date: January 29, 2024                          s/ Eric C. Tostrud
                                                _____
                                                Eric C. Tostrud
                                                United States District Court